RIGBY v. INDUSTRIAL COMMISSION et al.

No. 4907.   Decided April 8, 1930.   (286 P. 628.)

*E. D. Sorenson,* of Salt Lake City, for plaintiff.

*George P. Parker,* Attorney General, and *Logan M. Rich,* Assistant Attorney General, for defendants.

ELIAS HANSEN, J.

On October 6, 1928, Caleb T. Rigby was fatally injured while engaged in underground mining for the Combined Metals Reduction Company. He died the day after receiving the fatal injury. The state insurance fund was the insurance carrier for the Combined Metals Reduction Company at the time of the Accident. Application for compensation was filed with the Industrial Commission by Leroy Rigby, the father of the deceased. A hearing was had upon the application, and the Commission found that Leroy Rigby was not a dependent of his son Caleb T. Rigby at the time of the latter's fatal injury and death. Upon that ground alone the Commission denied compensation.

In this proceeding Leroy Rigby seeks an annulment of the decision of the Commission. He contends that the evdence shows without conflict that he was dependent upon his son for support and maintenance at the time of the son's death and that therefore as a matter of law some compensation should have been awarded.

The following facts are established by the evidence:

The plaintiff is 53 years of age. He is, and at the time of his son's death was, in good health, except that he is somewhat overweight. At the time his son was killed and for 49 years prior thereto plaintiff resided at Fairview, Sanpete County, Utah. At the time of the accident plaintiff was the owner of a home, some city lots, and 53 per cent of the capital stock in a flour mill. The home, the city lots, and the flour mill are all located at Fairview, Utah. The home was purchased for $5,000. There was a $3,000 mortgage on the home. The mortgage was payable at the rate of $53 per month. The monthly payments were applied first

on the interest on deferred payments and the remainder to reduce the principal. The record is silent as to the number and value of the city lots which were owned by plaintiff. The flour mill in which plaintiff owned 53 per cent of the capital stock was constructed at a cost of $22,000. There was an outstanding indebtedness of $1,700 against the mill. The capital stock owned by plaintiff was held as security for the payment of an indebtedness of plaintiff in the sum of $1,900. Plaintiff paid $8,300 for his interest in the flour mill. He testified that he had offered his interest in the flour mill for $4,150, and that he would take $2,250 for his mill stock. At the time his son was killed plaintiff was managing the flour mill and was receiving a salary of $100 per month for his services. At the time of the hearing before the Commission, the flour mill was leased for $91.65 per month. Plaintiff had no one dependent upon him for support. Since the death of the son, the mortgage on the home has been foreclosed. Plaintiff has left Fairview and secured employment elsewhere. At the time of the hearing he was employed by the Utah Construction Company at Bingham, Utah, at a wage of $3.90 per day. While plaintiff resided at Fairview he took part in civic affairs. He served as a city councilman and attended political conventions. While working at Bingham plaintiff lived in a portable house and boarded at the boarding house of his employer. His fellow workmen at Bingham, for the most part, were foreigners, principally Mexicans.

For some years before his death Caleb T. Rigby had contributed various sums of money to his father. The amounts of money so contributed varied with the amounts earned by deceased. Plaintiff testified that deceased, prior to his death, agreed to assist him financially and that when he was employed he gave plaintiff an average of $25 per month.

It is upon substantially the foregoing evidence that the plaintiff claims that he, as a matter of law, is entitled to some compensation for the death of his son.

Our Workmen's Compensation Act provides that a review by this court of awards made by the Industrial Commission "shall not be extended further than to determine whether or not: (1) The Commission acted without or in excess of its powers. (2) If findings of fact are made, whether or not such findings of fact support the award under review. (3) The findings and conclusions of the Commission on questions of fact shall be conclusive and final and shall not be subject to review; such questions of fact shall include ultimate facts and the findings and conclusions of the Commission. * * *" Laws Utah 1919, c. 63, § 3148 (b) (c), p. 165.

A father is not presumed to be dependent for support upon his son, but "the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death. * * *" Laws Utah 1919, c. 63, § 3140 (b), p. 164.

Whether one person is dependent upon another within the meaning of the Workmen's Compensation Act is primarily a question of fact. It is the exclusive province of the Industrial Commission to determine the facts and to draw legitimate inferences therefrom. It is also, in the first instance, the province of the Commission to determine from such facts and inferences whether dependency does or does not exist. When, however, the established facts and inferences reasonably deductible therefrom can lead to but one conclusion, a question of law is presented which this court, upon proper application, must review.

In this case all the evidence received before the Commission was offered by plaintiff. No evidence was offered on behalf of the state insurance fund. The findings of fact made by the Commission are responsive to the testimony. The plaintiff's complaint is founded upon the claim that no reasonable inference except that of the dependency of the father upon his deceased son can reasonably be drawn from the evidence offered and received before the Commission and from the primary facts found by the Commission.

In this case the burden was on plaintiff to establish dependency. The Workmen's Compensation Act creates no presumption that a father is dependent upon his son for support and maintenance. To entitle plaintiff to ■ compensation in this case, it must affirmatively be made to appear that at the time of the injury (1) plaintiff relied upon his son, in whole or in part, for his support and maintenance; (2) that had the son not been killed plaintiff would in all probability have received some assistance from his son; (3) that it was reasonably necessary for the son to render his father some financial aid in order that the father might continue to live in a condition suitable and becoming to his station in life. Upon the record it appears that the father relied upon his son for financial aid. And likewise it appears that had the son lived he would, in all probability, have continued to render financial aid to the father. The serious question presented for determination is whether we may say as a matter of law that the father could not have continued to live in a condition suitable and becoming to his station in life without any assistance from his son.

Much of the testimony in this case is directed to what the father did after the death of his son. The fact that the father may have had financial reverses since the death of his son can have no bearing upon the question here presented for review, except as it may tend to show the ■ condition that existed at the time the son was fatally injured. Dependency or the lack thereof must be determined from the facts as they existed at the time of the injury and death of the person upon whom dependency is claimed. At the time Caleb T. Rigby died plaintiff was receiving a monthly salary of $100 as manager of the flour mill in which he held a majority of the outstanding capital stock. He consented to lease the flour mill because, as he testified, a number of small stockholders "thought they could do better if it was leased." Apparently the flour mill was paying

well during the time it was managed by plainitff. The following is quoted from his testimony:

"The last six years when I was out of it the outfit ran it on the rocks and busted it, and I took it over because I was the heaviest stockholder. We were owing about $11,000.00, and $500.00 on the books. When I turned it over at the end of the year I reduced it to about $6,500.00.

"(Questions by Commissioner McShane.) Q. During the time you had it after you had got into some difficulty the mill seemed to be paying out? A. I paid it all but about $6,500.00 of the original indebtedness.

"Q. With additional assets of nearly $500.00? A. When I took stock we had $5,200.00 due us in accounts due the mill and we were owing about $4,300.00 at that time."

The record is silent as to the amount per month that is necessary to supply the plaintiff with food, clothing, fuel, etc. Had the plaintiff retained the management of the flour mill, rented such portion of his home as was not occupied by him, and disposed of his city lots, the Commission may have reasonably inferred from the testimony that he would have been able to meet his obligations and have sufficient funds remaining to provide for his support and maintenance according to his station in life. In such view it cannot be said that as a matter of law plaintiff was dependent upon his son Caleb for support and maintenance. The decision of the Industrial Commission here under review is affirmed.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.